LLOYD ROYAL BELGE v. AMERICAN COAL EXPORTING CO. (three cases).

District Court, S. D. New York. June 29, 1927.

1. Admiralty ⊚=66—Respondent held estopped to deny, by amended answer, execution of charter parties admitted in its original answer four years before.

Respondent corporation, which in its original answer, verified by its president, admitted execution of the charter parties sued on, *held* estopped to deny such execution and that it was in existence at the time of their execution by an amended answer filed four years later.

2. Shipping ⊚=173—Cesser clause in charter party held not to apply to claim for demurrage which accrued before loading.

The cesser clause in charter parties *held* not to bar right of action against charterer for demurrage accruing before the vessels were loaded, for which there was no lien against the cargo.

In Admiralty. Suits by the Lloyd Royal Belge as owner of the Steamships Bolivier, Caledonier and Elzasier, against the American Coal Exporting Company. Decrees for libelant.

Loomis & Ruebush, of New York City (Glenn W. Ruebush, of New York City, of counsel), for libelant.

Bigham, Englar & Jones, of New York City (T. Catesby Jones, of New York City, of counsel), for respondent.

WINSLOW, District Judge. These three actions in admiralty are for demurrage accruing to the owner of the three vessels named under three charter parties. These charter parties were executed at New York, April 16, 1920, and provided for the respondents furnishing to the steamers, at Newport News, etc., cargoes of coal. The charter parties also provided that for each and every day the steamers were on demurrage at the loading port, the respondents would pay, etc. When the steamers arrived at Newport News in July and August, 1920, the designated port, the charterer was in each case unprepared to furnish the cargo, except after substantial delay. The demurrage accruing at the rate provided for was: On the steamer Bolivier, $8,681.46; on the Caledonier, $4,481.47; and on the Elzasier, $20,755.15.

There was no dispute as to the facts above recited, but the respondent denies liability, for two reasons:

(1) Denies that it executed the charter parties and was not bound by them.

(2) Contends that the libelant had forfeited all right to recover demurrage by reason of the so-called cesser clause in the charter parties.

[1] The first of the two defenses upon which the respondent relied, namely, that the respondent did not execute the charter parties, was raised under an amended answer interposed six years after the cause of action arose and four years after the beginning of the litigation. It is contended that the charter parties in question were executed by a Maine corporation of similar name, whereas the respondent named herein is a New York corporation, which was not organized until after the execution of the charter parties, and which latter corporation acquired the property of the Maine corporation. It appears, however, from the record, that this very respondent, up to the time of the amendment of the answer, had specifically admitted that it was the party that had made the contracts of charter party with the libelant. The original pleadings show that the respondent admitted, in substance, in each instance, that the contracts were made by this very respondent. The verification was made by its president. His verification was as "president of American Coal Exporting Company, Inc.," and that the same was "true as to his own knowledge," etc.

Besides the admissions in the original pleadings, there are numerous other written admissions and representations in the record to the same effect. The bills of lading in evidence are on the printed bills of lading of "American Coal Exporting Company, Inc.," and, in the bill, appear the words, "shipped in good order and condition by American Coal Exporting Company, Inc., of New York," etc. All of the letterheads in evidence showing the correspondence between the parties, in like manner contain the same recitals.

The order permitting amended answers, while authorizing a denial that the respondent had *executed* the charter parties, did not, I think, permit the respondent to deny its very corporate existence at the time of the execution of the said charter parties.

Evidence was offered on the trial herein tending to show that a corporation having the name of this respondent was not actually in existence at the time of the execution of the charter parties, but I do not think such evidence is properly admissible and that on the record this respondent is estopped from denying its corporate existence.

"Admiralty applies equitable principles. * * * Admiralty may give effect to an equitable estoppel, may prevent a party from taking advantage of his own fraud in the contract itself, and may treat a contract as nullified by fraud. * * * The court is bound, by its nature and constitution, to give

judgment upon equitable principles and according to the rules of natural justice." Benedict on Admiralty (5th Ed.) § 70; Higgins v. Anglo-Algerian S. S. Co. (C. C. A.) 248 F. 386.

Allegations or admissions made inadvertently do not operate as an estoppel, where no prejudice has resulted. But, in the present instance, the libelant would be irreparably injured were the respondent permitted to profit by its radical change of front at this late day.

These actions, of course, are not based on fraud, but on contract. Whatever suggestion of fraud has entered into the case, if at all, is because of evidence presented by the respondent. I do not think the respondent should be heard now to deny its corporate existence at the time of execution of the charter parties.

[2] The second ground of defense urged on the trial herein is, in substance, that there was nothing due to libelants under the charter party. The cesser clause reads as follows:

"9. The liability of the party of the second part shall cease and terminate as soon as cargo is loaded and the freight is paid. Steamer to have a lien upon the cargo for all freight, dead freight, and demurrage and all and every other sum or sums of money which may become due the steamer under this contract of affreightment."

I am of the opinion that this clause has no application to demurrage accruing prior to the loading of the vessel and the signing of the bill of lading. These actions are for demurrage accruing prior to shipment. While the language quoted may seem, as a matter of first impression, to include demurrage incurred prior to shipment and issuance of the bill of lading, I think the clause is intended, rather, to transfer merely the personal liability of the charterer for sums which may become due for freight, etc., to the cargo. I do not think that the clause intends that the vessel surrenders any of the carrier's rights against the charterer for which no lien can be had against the cargo. No lien could arise against the cargo for any event happening before the cargo was loaded.

"Such a clause is not to be construed as retroactive, or to cut off and extinguish liabilities already incurred." The Marpesia (C. C. A.) 292 F. 957, 973, 974.

For the reasons stated, libelants will be awarded a decree in each of the three cases in the amounts claimed, together with interest and costs.